IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH KOUBA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 11211 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| PATRICK FLYNN, MICHAEL SWEENEY, GERALD PAULI, CHARLES DECOLA, LARRY ALEXANDER, ANTHONY LAMY, KEVIN WAGONER, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and LOCAL 710, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In a five count amended complaint, plaintiff Joseph Kouba has sued defendants Patrick Flynn, Michael Sweeney, Gerald Pauli, Charles DeCola, Larry Alexander, Anthony Lamy, Kevin Wagoner (the "Officer Defendants"), Fidelity and Deposit Company of Maryland ("F&D"), and Local 710, International Brotherhood of Teamsters ("IBT") seeking to recover restitution of the salaries paid to the Officer Defendants while they were embezzling funds and concealing the poor condition of Local 710. The action is brought under § 501(b) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(b), which authorizes a union member to sue on behalf of the union any officer for breach of fiduciary duty, if the union or its governing board has refused to do so. Counts I and II are brought against Flynn for violating § 501 of the LMRDA. Count III is a claim against the other Officer Defendants. Count IV is a state law breach of fiduciary duty claim against Flynn. Count V is a claim against F&D for recovery under a statutorily mandated insurance policy issued by F&D to the Local to

protect against loss as a result of fraud or dishonesty by the Local's officers. No claims are brought against Local 710, which was named as a necessary party under Fed. R. Civ. P. 19.

F&D and Local 710 have filed separate motions to dismiss arguing that the complaint fails to state a claim against them. For the reasons stated below, both motions are denied.

## **BACKGROUND**

Plaintiff is a member of Local 710. Flynn is the former Secretary-Treasurer and Chief Executive Officer of the Local. He was the highest paid Local official in the IBT in 2010 through 2012, earning a salary of approximately $435,000 per year. While he was employed in his position at Local 710, Flynn embezzled 1,383 gift cards purchased by the Local, worth $58,325. The complaint contains detailed allegations as to how Flynn carried out his embezzlement that need not be set forth here, except that the complaint alleges that the other Officer Defendants knew of and allowed Flynn to carry out his scheme.

The complaint also alleges that the Officer Defendants gave false and misleading information about the Local's financial condition in publicly filed reports portraying the Local as solvent when in fact it was in a deficit condition and had negative net worth. As a result of Officer Defendants' mismanagement and corruption, the IBT placed Local 710 into Trusteeship. The IBT then brought an action in the Southern District of New York against the individual defendants seeking, among other things, restitution by Flynn of the embezzled funds. That action has been resolved. The IBT has taken no action to seek recovery of defendants' salaries. On April 27, 2015, plaintiff requested that the IBT seek the return of the individual defendants' salaries for the period involved in the corruption. The IBT has refused.

## DISCUSSION

**F&D**

In Count V, plaintiff seeks, on behalf of the Local, to recover under the terms of a commercial crime policy issued by F&D to Local 710 (the "policy"). F&D has moved to dismiss, arguing that plaintiff has no standing to enforce the policy which covers loss to the Local only, not to what F&D describes as "third parties." In the alternative, F&D argues that even if plaintiff has standing, any claim under the policy is untimely because it is brought well beyond the two year limitations period provided in the contract. The court disagrees with both arguments.

F&D first argues that it never agreed to insure plaintiff, only Local 710. The policy language provides that it "is for [Local 710's] benefit only," that it "provides no rights or benefits to any other person or organization," and that "[a]ny claim for loss that is covered under this policy must be presented by [Local 710]." According to F&D, the plain language of the policy prevents plaintiff's claim.

Plaintiff admits that he individually is not a named insured, but argues that he is not suing individually, but under § 501(b) on behalf of the Local, because the Local refuses to do so. He argues convincingly that his claim is a "derivative type" to recover for damages to the insured based on conduct covered by the policy. In essence, he argues that he is "standing in the shoes" of the Local, and it is the Local that is effectively presenting the claim.

F&D counters that plaintiff's reliance on § 501(b) is misplaced because that section allows a member to sue "such officers, agents, shop steward, or representative in any district court of the United States . . . to recover damages or secure an accounting or other appropriate

3

relief for the benefit of the labor organization." 29 U.S.C. § 501(b). According to F&D, the cause of action provided to a union member under § 501(b) is limited to suits against the individual wrongdoers. The statute says nothing about suits against sureties or anyone else. Citing Bueker v. Madison County, 2016 IL 120024, 2016 WL 7007734 (2016) and Peabody v. Davis, 636 F.3d 368 (7th Cir. 2011), F&D argues that both the Illinois Supreme Court and the Seventh Circuit have rejected plaintiff's derivative standing argument. Neither case, however, involves the precise situation before the court, and neither fully supports F&D's position.

In Bueker, private citizens brought a putative class action against the issuer of a statutorily mandated public official bond, as surety to the county treasurer and collector, seeking damages for an alleged scheme to inflate the interest rates delinquent property tax payers were compelled to pay to those who had purchased the delinquent tax payer debt. The Illinois Supreme Court concluded that the private citizens were not proper claimants on such statutorily mandated public official bonds, stating that the proper claimant is the named obligee, unless the legislature has expressed in the statutory language its intent to allow others to sue directly on the bond. Id. ¶ 10. After reviewing the statute requiring the bonds, the court found that both sections required the "People of the State of Illinois" to be named obligee. The People of the State of Illinois refers to "the body politic," which it defined as a "group of people regarded in a political (rather than private) sense and organized under a single governmental authority." Id. at ¶ 17. The court found nothing in the statute that would allow private citizens to sue in their own interest for damages on a public official bond running only to the people of the state of Illinois. Id.

4

Bueker did not involve a derivative claim. The plaintiffs were suing for their own interests seeking to recover for themselves, not for the named obligee. Bueker thus gives no support to F&D's argument that the court rejected derivative standing. Indeed, the Bueker court distinguished cases brought by the "people for the use of an individual defendant." Id. at ¶ 18-21.

In Peabody, a plan participant brought an action under ERISA against the plan sponsor, the ERISA plan, the plan trustees, and their insurers for breach of their fiduciary duties in managing the plan. He sought to recover damages to himself rather than on behalf of the plan. The district court held that the plaintiff lacked standing under ERISA to sue the "non-fiduciary insurance defendants." The Seventh Circuit affirmed. Notably, however, on appeal the plaintiff had conceded that the insurers were not proper defendants under ERISA §§ 502(a)(1)(B), which provides that a plan participant may bring an action to recover benefits due him under the terms of the plan, to enforce his rights under the plan or to clarify his rights to future benefits, or under § 502(a)(2), which provides that a plan participant may sue a fiduciary for breach of duty and which requires such fiduciary to "make good to such plan any loss . . . ." 29 U.S.C. § 1132(a)(1)(B), (a)(2). Instead, the plaintiff argued on appeal that he had standing to sue the insurers under § 502(a)(3) which, as the court noted, allows for the recover of "other appropriate equitable relief," including potentially recovering from non-fiduciaries, if such relief is unavailable under the other two sections. Peabody, 636 F.3d at 373. The court held that the plaintiff's claim failed because "the relief he seeks, money damages under the plan's insurance policy, can not be described as typically 'equitable.'" Id. at 379. Thus, the Peabody court, like

the Bueker court, never addressed the issue of derivative standing, where the plaintiff sues the insurer on behalf of the insured.

As plaintiff points out, however, there are several district court decisions addressing the exact issue before the court, and all have found standing. These courts have generally examined the interplay between § 501(b,) which gives members the right to sue on behalf of the union any officers who have violated their duties, and § 502, which requires unions to bond such officers to provide protection against loss by reason of acts of fraud or dishonesty, and note that although § 502 does not specifically provide which parties may sue on the bond, courts generally recognize that Congress intended the LMRDA to be broadly construed. See Tarantino v. Ford, 2009 WL 2449236 *4 (Aug. 7, 2009) (and cases cited therein). As stated in Robinson v. Weir, 277 F.Supp. 581, 582 (D. Neb. 1966):

> It is the conclusion of the Court that Congress intended that under § 501(b) a member should be entitled to sue for complete and appropriate relief, which would include not only suing the officer or representative but also the surety which has bonded that officer or representative. Any other determination would not effectuate the purpose of the Act and would require a multiplicity of suits in order to ensure the members would receive complete and appropriate relief and that they would be properly protected.
>
> It is the decision of the Court that under [§ 501(b)] a member who is suing an officer . . . may also join as a defendant and sue for the benefit of the organization the surety which has bonded that officer . . . pursuant to § 502 . . ..

This court agrees with the reasoning in Robinson. It makes little sense to allow a member to sue the wrongdoing fiduciary who may well be impecunious, but not allow the member to sue (for the benefit of the local) to recover on the bond created to protect the local from just such a situation. See also Purcell v. Keane, 277 F.Supp. 252, 257 (E.D. Pa. 1967)(If the union officers in charge have refused to sue the individual fiduciaries, it is unlikely they will

6

sue on the surety bond). Consequently, the court concludes that plaintiff has standing to sue F&D.

Next, F&D argues that plaintiff's suit is untimely based on the policy's two year limitations period. A contractual limitations period, like a statute of limitations, is an affirmative defense that ordinarily must be pleaded and proved by the defendant. Fed. R. Civ. P. 8(c)(1); Jay E. Hayden Foundation v. First Neighbor Bank, N.A., 610 F.3d 382, 383 (7th Cir. 2010). "Complaints need not anticipate defenses and attempt to defeat them." Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). As a result, the Seventh Circuit has often held that Rule 12(b)(6) is not designed for motions under Rule 8(c)(1). Id. (and cases cited therein). Only if it is plain from the complaint that the limitations defense is indeed a bar to the suit is dismissal proper without further pleading. Jay E. Hayden, 610 F.3d at 383. Unless "the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development." Foss v. Bear, Sterns & Co., 394 F.3d 540, 542 (7th Cir. 2005).

In the instant case, the complaint certainly alleges facts to suggest that the Local discovered the loss (the alleged embezzlement) over two years before plaintiff added F&D to the instant suit. The complaint also alleges, and plaintiff has submitted other materials that suggest, that the Local has made a claim on the bond, and that it and F&D have agreed to stay F&D's decision on that claim until the instant suit concludes. Such an agreement might toll the limitations period or, if the claim is still pending, might mean that the period has yet to start running. The court may not consider matters outside the pleadings on a Rule 12(b)(6) motion, however, which is precisely why such motions are generally an inappropriate method to raise a limitations defense. In any event, the court cannot conclude that the complaint alleges facts that

7

create an "ironclad" defense. Consequently, the court concludes that it is not plain from the complaint that the contractual limitations period is a bar to the suit, and denies F&D's motion to dismiss on this ground.

**Local 710**

Plaintiff has sued Local 710 as a "necessary party" under Fed. R. Civ. P. 19 which provides:

> (a) Persons required to be joined if feasible.
>
>> Required Party a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>>
>>> (A) in that person's absence the court cannot accord complete relief among existing parties; or
>>>
>>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>>
>>>> (I) as a practical matter impair or impede the person's ability to protect the interest or
>>>>
>>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Local 710 has moved to dismiss, arguing that it is not properly joined because § 501(b) grants plaintiff standing to act on the union's behalf "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." Thus, Local 710 argues that its presence in the law suit is not necessary simply because it may benefit from a ruling in favor of plaintiff. According to the Local, because under § 501(b) plaintiff "stands in the shoes of the Local," any order the court issues in plaintiff's favor by force protects Local 710's interests.

Plaintiff argues that Local 710's presence is necessary to protect the individual defendants from any subsequent suit should they prevail against plaintiff.

Surprisingly, there is a dearth of authority on this subject. As plaintiff points out, however, those cases that have directly addressed the issue have concluded, based on the derivative nature of the suit, that the Local is a necessary party. For example, in Brink v. DaLesio, 453 F.Supp. 272, 279-80 (D. Md. 1978), the court stated:

> Any recovery won by plaintiff will accrue to the union's sole benefit and a final decree in such a case must award the locals the fruits of victory. Without a joinder of the locals, a second action may be necessary to implement the result. Conversely, should the individual defendants be absolved from liability in this suit, res judicata would not necessarily shield them from another action if the locals were absent here. Thus, the specter of multiple actions and inconsistent results, as well as the union's obvious interest in the outcome, compels their inclusion.

This court agrees with the reasoning in Brink, and concludes that Local 710 is properly joined under Rule 19(a). Because Local 710 initially refused to bring this action, plaintiff has properly joined it as a defendant. The Local has argued that it should be realigned as an "involuntary plaintiff" under Rule 19(a)(2), which provides that "[i]f a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." That rule, however, applies only when a party has not already been joined. In the instant case, Local 710 has been properly joined as a defendant, because it has refused to act as a plaintiff. As the court in Brink noted, it is up to the union to decide its alignment. Id. It can align itself with plaintiff by assisting him. If it opposes plaintiff, it can remain a defendant, but it cannot assist the individual defendants because that would conflict with the policies of LMRDA. Id. (and cases cited therein). Consequently, Local 710's motion to dismiss is denied.

9

## CONCLUSION

For the reasons described above, F&D's motion to dismiss (Doc. 47) and Local 710's motion to dismiss (Doc. 53) are denied. F&D and Local 710 are ordered to answer the amended complaint on or before May 26, 2017. The status hearing previously set for May 17, 2017, is continued to June 1, 2017, at 9:00 a.m.

**ENTER:     May 3, 2017**

_____
**Robert W. Gettleman
United States District Judge**